to have two veteran lawyers appear in the last case. Mr. Widenhouse and Ms. Ray. Mr. Widenhouse, take your time. Whenever you're ready to begin, we'll be glad to hear from you. How about September? All right, let's go. May it please the Court, I'm Gordon Widenhouse. I represent James Lespier in his appeal from convictions for first-degree murder and use of a firearm during a murder in the Western District of North Carolina. In sort of overview to my argument in the case, I would make an several things in observation. First, this was a situation that really sounded more in a non-premeditated murder, more a second-degree murder as opposed to a first-degree murder after premeditation and deliberation. I think that's a fair reading of the evidence. The government initially indicted this case for second-degree murder, only got a superseding indictment seven or eight months later after the defendant changed counsel and hired a lawyer to represent him. Perhaps there's a suggestion to the record that the government got the superseding indictment because the defendant rejected the plea offer in the case. You don't have a claim of retaliatory prosecution or anything like that, though? No, but my point is simply I think it suggests that the global view of the evidence is this is more a second-degree murder case than a premeditated murder case. That might be right, but I mean, you're not claiming that the government, any misconduct by the government charged him with first-degree. No, I'm not arguing. And under the law, when you charge him with first-degree, you charge him with all the lesser-included offenses, too. That's correct. That's what that, right. And you all didn't want the second-degree destruction. Well, the defendant at trial didn't want the second-degree destruction and the trial lawyer didn't want it. But I meant you all. That's correct. You're the assignee of the trial lawyers who didn't want the second-degree destruction, insisted they not get a second-degree destruction. That's correct. Because they thought they might get a first-degree acquittal, which might have been, at the time, looked like a decent trial tactic, and it blew up in their face. Wasn't that decision more the defendant's than it was the defendant's lawyer? Well, I think there are only two decisions that belong exclusively to the defendant without reservation. That is whether to go to trial or plead guilty and whether to testify. I think that on the issue of whether an instruction on a lesser-included offense should be given belongs to the court because, as the district court observed here when that issue came up, the question about instruction on a lesser-included offense is based on the evidence that's presented in the case. I'm sorry to interrupt you, Mr. Bynum. That's all right. Your view is, as I understand it, that the judge has a responsibility to charge the law that might be applicable to the facts of the case, regardless of whether people want it or don't want it. Correct. Yes, and I do think that ought to be the rule because what society wants and what the justice system wants is an accurate resolution of the facts. And the government took your position at the trial. Still takes my position, even before this court. And I think that's consistent with the point I'm trying to make about the issue or the principle that I'm trying to articulate is that there is a public right to an accurate jury verdict. There's a principle within the justice system. What the justice system strives to obtain is a fair result. It means, I think, that we don't want the defendant convicted of a greater offense if, in fact, he's guilty of a lesser offense. And the flip side is also true. We don't want the defendant acquitted completely if the evidence shows he's guilty of something. In order to achieve that result, in order to honor that principle that I think underlies our entire justice system, the court should instruct on lesser-included offense, even if the defendant objects to it, if it is supported by the evidence, which it clearly was in this case. Everybody thought it was supported by the evidence except for, and I'm sure the defense counsel didn't think it was supported by the evidence. He simply didn't want it because his client said he didn't want it. Well, as I read the record, the defense counsel vigorously opposed an instruction on second-degree murder. He did. He was honoring his client's request in that regard. Well, do we reach the point of invited error? Well, I think there's a question of whether the court should apply invited error in a case like this. I would agree that the issue in it, I mean, the error was invited except the government's position that the instruction should have been given, your position now that it should have been given, that it was invited error, and whether that applies here. That's correct. I agree that the question for the court is whether it should apply the invited error doctrine. I mean, I think you'd take the position probably that the Rule 31 requires an instruction on the lesser-included offense. Correct. If you charge somebody with a first-degree murder, that encompasses second-degree or whatever else is included. If it's correct. I don't know what all it is in the North Carolina law or the law that applies here, but West County has at least four offenses, I think, charged with a first-degree murder indictment. I would agree. There are, at least in North Carolina, three lesser-included offenses that would be encompassed within a first-degree murder charge. But the court would only be obligated to instruct on those lesser-included offenses if it was supported, if the lesser-included offense was supported by the evidence in the case. If all— I'm talking about the North Carolina law. This case wasn't controlled by North Carolina law, it was federal law. Correct. I thought Judge Keene was asking me about North Carolina. Well, I was throwing that out because it was tried in North Carolina, it was on the Indian Residence. It was on the Indian Residence. Correct. I don't know. I don't know what it is under federal law, but there are lesser-included offenses. Correct. And there would be a lesser-included offense under federal law for first-degree murder of second-degree murder if it is supported by the evidence, which was why I think it's out in this case. It really looks—I mean, if this court considers the run of first-degree murder cases that this panel has probably observed over their careers as jurists, this doesn't look like a first-degree murder case. It looks like a second-degree murder case. And even— If we go along with you here, no defense lawyer would want a lesser-included offense. Down the road, and would say, because they think if they lose it on the first degree, they can get a new trial by resisting it. And I— To change your mind on appeal. But what I'm asking the court to do is craft a very narrow rule based on the facts of this case, which includes the fact that the government indicts the case on second-degree murder because that was their initial observation of what the case involved, only chooses later after the defendant changes counsel and rejects a plea bargain to raise it to first-degree murder, which, of course, they're properly permitted to do. But I think it illustrates the type of evidence we have. Yeah, but then you're getting real close to prosecutorial misconduct. Well, I'm really trying not to argue prosecutorial— I know you are. Because I'm not pointing the finger at— certainly not at Ms. Wray. She wasn't the trial lawyer for the government here. Or even the lawyers who represented the government at trial. They were— they could make the— If it was a— if it would be prosecutorial misconduct, we'd go right to the U.S. attorney. The U.S. attorney approved it, I'm sure, in a case like this. But you're not accusing them of that. I'm not. It's a legitimate charge. The first-degree murder charge is a legitimate charge. You agree to that. Absolutely. I simply think the way they proceeded in the case illustrates that this is more like a second-degree murder case, which I think the court should take into account in deciding whether to apply the righted error doctrine on the facts of this case. That puts them to ascribing meaning to superseding indictments. But no more than ascribing— They could have come up with some better evidence between the two indictments. I mean, at some point here, they got some evidence that the firearm was right close to the back of her head. But that was in the autopsy report, which is long before they get— But they could come up— between the two indictments, there could have been some additional evidence that supported the proposition further, that it was first-degree rather than second-degree. That's correct, which is why I'm not arguing— We don't go behind that kind of thing. I mean, that's a call of the prosecutor and the grand jury. It's not really any of our concern. It's only a part of— It's only— You're challenging it. Correct. It's only a fact that bears consideration in determining the strength of the evidence in the case and whether, based on the strength of the evidence with regard to second-degree murder, whether the court should reject invited error on the facts of this case. That's the only importance of the change in the indictment. What about the issue of trial strategy? Normally, a court doesn't interfere with the trial strategy proposed by the defendant. Nothing— The trial court instructing on second-degree murder here would not impact on the defendant's trial strategy. The defendant put on the evidence, did his cross-examination the way he wanted to. It was as— He did accept it as trial strategy. He wanted to roll the dice because he didn't think the jury would convict him of first-degree murder, so he didn't want the chance of a jury coming back with a lesser-included verdict. I— Well, that was trial strategy. I understand. And I'm simply saying that the system of justice ought to rise above trial strategy in a sense of trying to have the system reach the most accurate verdict on the facts. And my point is the most accurate verdict on the facts of this case, in my opinion, and I think based on the evidence, would be second-degree murder. I think that's supported by the fact that the government wanted that instruction as well. I'd like to turn briefly to the fourth issue. Do you think the government had a right to that instruction? Do you think it was error for the government not to get the instruction? I do. I think there are two unpublished cases that, you know, I cited in our brief, which this court says the government should get the benefit of that instruction. Did those cases involve where the defendant didn't want the second— the lesser-included offense instruction? There's no indication in their very short unpublished decision. There's no indication about that one way or the other. One of those, that Sylvia case? Correct. Judge Philpott and Pucker were the two cases. And those cases were— at least one of those cases were presented to the district court. I mean, the government was making a very, very strenuous plea to get an instruction on second-degree murder. And the whole rationale of Rule 31— That's correct. And I think the better rule— I think if you were making a decision— and it sounds like maybe that's what's going to get written in this case, in this opinion in some respect— a decision about a defendant's trial strategy with regard to a lesser-included offense and the government's right to instruction on lesser-included offense, I think the government's precedent because the global— the overriding principle of the justice system is to reach the fairest and most accurate result. I think I've entered the twilight zone. Gordon Whitehouse is arguing that the government should be allowed to prevail and get its way on an issue in conflict with what the defendant wants. I won't quote you on that. I suppose stranger things have happened, but not maybe much stranger than that. Well, I think we can all agree he made a bad decision. Yeah, I think we could definitely agree about that. In retrospect, it was a bad decision because he rolled the dice and lost. And it was a roll the dice. But that's trial tactics. I agree. And the question is whether you change your mind on the field and take advantage of it. And again, I think the notion in Beck v. Alabama in Rule 31 that an instruction ought to be given if it's supported by all the evidence, that's the rule that ought to control because the only rules that are absolute about a defendant's choice is whether to go to trial or plead guilty and whether to testify. Everything else is not absolute. The justice system's absolute principle ought to be we want to do everything we can to reach the fairest result in a case. Let me just interrupt you. The appeal that your argument has to me is that when it comes to deciding what crimes a jury is going to be allowed to consider, whether or not a defendant's guilty or not guilty, is serious business and should not be a matter of gamesmanship. It shouldn't be a matter of tactic or strategy. It's what is approved, what could he be convicted of or not be convicted of. And it shouldn't be a subject where somebody can use gamesmanship, to use it as a tactic or strategy. And we now have the second strange thing about this case. I'm in agreement with you. I'm just trying to articulate what I'm stating. Well, I disagree with that. I mean, I read Rule 31 to mean that the court has an obligation to instruct on the charge. And the charge might include what it says plus what the lesser included offenses are. And I think that's sort of what the government was arguing, I guess, down below and maybe up here too. But that wasn't done here because your man objected and prevailed on his objection. I agree. And I think the principle underlying that rule ought to control over the defendant's decision. But there's no question it was invited error. I mean, you fought hard to get there. I agree. To get here. I agree. I simply ask the court not to apply the invited error doctrine based on the principles underlying Rule 31 and Beck v. Alabama. I know I've reserved three minutes for rebuttal. Is it possible for me to use one of those and let that be switched so that I can get to the fourth issue in the case and have about two minutes? Sure. Thank you. The fourth issue in the case deals with the district court's refusal to allow the defendant to call an expert on sleep deprivation. And the nub of my argument here is that the district court abused its discretion by failing to exercise its discretion. The district court's observation when the government filed a motion asking for a Dorbert hearing on this issue was to say, and it's right around page 215 of the joint appendix, we don't even get to Dorbert with this situation. This kind of, I don't even need to look at reliability and relevancy because this kind of expert, this kind of testimony invades the province of the jury. What the defense lawyer responded was to say, well, if you look at the report in this case, this is not something that it merely goes to the credibility of a witness, which is exclusive of the province of the jury. This is something that is beyond the kin of an ordinary layman. That being that sleep deprivation that was involved in this case, which was more than 24 hours, during which he was interrogated five times by the law enforcement, all of which was proper, nobody's arguing coercion or anything, but that the inconsistencies in those statements could have been the result of cognitive impairment based on sleep deprivation. Something that the lawyer said he wasn't aware of until he had retained the expert. Something I wasn't aware of until I got involved in this case and saw the expert's report. In fact, the expert said that this kind of sleep deprivation would be the equivalent of a blood alcohol content of .08, which is substantial impairment. Can't drive that way in North Carolina if you have that sort of blood alcohol content. The district court did not do a Daubert or Rule 702 inquiry into this kind of expert testimony, but simply said, I'm not going to let it in. I think that was an abuse of discretion to fail to do that because this would have been positive defense evidence that the defendant had a constitutional right to present under Chambers v. Mississippi, it's constitutional error that the government then has to show is harmless beyond a reasonable doubt. Because the government relied on the inconsistencies in these five statements taken during this trial, the consciousness of guilt on the part of the defendant, I think it's impossible for the government to show that the exclusion of this expert testimony was harmless beyond a reasonable doubt. But again, the important feature of this issue is the district court's failure to exercise the discretion it was supposed to exercise in doing a proper analysis under Rule 702 and Daubert. So we would ask the court to reverse and remand for another trial. Thank you. White House. Ms. Wray, you're in the unusual position of coming to defend an action of a judge and doing something you told him not to do, asked him not to do, below. Indeed, and may it please the court. Yes, we do agree that Judge Ridinger erred and actually would be very happy to have a published opinion noting that if the government requests a lesser included defense instruction, it should be given. However, I want to be very clear that the defendant in this case received a fair judgment and it is an accurate result. He was convicted of premeditated and deliberate murder because the evidence amply supported that charge. The government charged first degree murder because after, and I will, just because the suggestion has been made that, I don't think it's legally relevant, but the suggestion has been made that the government was upset or whatever and decided to charge something greater than the government actually thought the evidence supported. And he was charged with second degree murder about, actually the offense occurred three years ago. Today it was about two weeks afterwards. There was no autopsy report by that point. So the autopsy report came up later? Absolutely. And at least according to the prosecutor who I spoke with, it was afterwards. It usually takes about six weeks. He was charged two weeks later in an indictment with second degree murder. The discussions were already underway with defense counsel that if he would agree to plead to second degree, that would be okay. And then he withdrew the plea and the government looked at the evidence that it had at that time and chose to charge first degree. And that was completely fair. This was a defendant who had not only threatened but physically, you know, acts of violence against this person. He claimed many different explanations of how it happened. But what we knew by then was that none of those explanations was physically possible. Did the autopsy report, that's the first time you all knew that she was shot in the back of the head? The angle. And the firearm was, what, an inch away or something? Yeah, it was between five and 15 centimeters. And more importantly, it was at an angle that a hand can't possibly wield a firearm to oneself at that angle from the back of the head. And what we realized was this gentleman had shot her at point blank range. We also learned from the stepdad of the victim, Ms. Smith, that he had been over at the defendant's house two days before and the defendant had said, I always keep my guns locked up when Mandy's here. It also happened to be where he kept the pills. And he said, I always keep it in a safe. All my guns are in a safe locked up when she's here. So that evidence supported the premeditation that he had to go over, unlock that safe, and get the gun out. And it completely refuted his explanation of events that she got the gun first and that she was shooting at him. Given the angle of the bullet and the impossibility of the woman holding the gun at that angle, is it your argument then that the facts and evidence do not reasonably support second degree murder? No, I wouldn't say that, Your Honor. She either shot herself or she didn't. Right. It refuted his explanation of events without question. Now, the question of premeditation, that we have to show that at least for a moment, he knows what's going to happen. And we did show that. And I don't think that the government has ever suggested that we couldn't prove first degree. But one, also, because second degree under the federal statute is malice of forethought without premeditation and deliberation. And because that question was sufficiently close with no one else present and no evidence that he had planned it, say, before that night, we wanted second degree instruction and should have been given the second degree instruction. But I just want to be abundantly clear that this is an accurate result. There is nothing about this judgment or verdict or finding by the jury that is inaccurate or would call into question the fairness of this judicial proceeding, nor the appropriate charge of first degree murder by the government. And I understand that Mr. Widenhouse is not suggesting that the government committed misconduct. But it was a situation of evolving proof. This argument sounds to me like if you had a situation where the defendant is not opposing a second degree instruction, but wants a second degree murder instruction, that if the jury doesn't get it, that if the jury convicts him of first degree murder, then there can't be any harm because they convicted him of a greater offense. No. Your Honor, I don't think that we would. I mean, that's not the situation in front of us right now. But if a defendant came before, I think it's fair to say that if a defendant requested a second degree murder instruction and the judge refused to give it, I would not be standing up here on appeal suggesting that that was not plain error and that it did not affect his substantial rights, even though the jury had found premeditation and deliberation. And obviously, the fact that he'd been convicted of a greater one is not dispositive of his right to the lesser degree. That's right. I mean, this was a—the government knew all along, and I don't think it's a secret, that this could have gone with a second degree conviction. And we were not pleased with the judge's decision not to instruct on second degree because we were afraid it could result in an acquittal under these facts. However, that is because the jury gets to make findings of fact, and it could have decided in this case that there wasn't premeditation and deliberation, but the facts that we produced amply support that. And— You said you agree that there's error. I'm not sure I understand. Well— What error do you say there is? Right. Okay. Let me be clear. There was no error—there is no error on appeal. It was an invited error by the defendant. I thought you were arguing that there was error even though the jury convicted him on first degree murder. There's no error—no, no, no. Absolutely not. There is sufficient evidence to support the first degree murder conviction, and that is correct. What we are conceding is that the judge in this case, Judge Reidinger, should have instructed on second degree. So at that level, in the district court, the district court made an error. But that error was requested by the defendant, vigorously sought by the defendant, and objected to by the government. And this court has noted that the invited error—I mean, first of all, I'm not aware of any case where this court has actually applied an exception to that rule, but the court has said if there is an exception to the invited error doctrine and rule, it does not apply where a defendant makes a request that's reasonably designed to benefit that defendant. Now, this request may have backfired on the defendant, but it was reasonably designed to benefit him. Well, I don't disagree with what you said when it comes to situations involving admissibility of evidence or questions of that nature. But when it starts getting into what the judge is going to tell the jury, not what evidence they're going to see, who's going to testify to what or what exhibits are going to be introduced, but when it comes to telling the jury what crimes they can consider, you know, to me you're almost getting beyond the realm of invited error. You're getting into, you know, what's something so fundamental that I'm not sure we should accept invited error that long, that the judge should be making the decision as to what crimes could the defendant reasonably be convicted of based on the evidence. That should be something that is his and his alone. It's so important that that's a decision he makes independently of what the two sides want or don't want. Well, this court has, I believe it's this court, and I cited the cases in my brief, it has been extended to instructional error. So, invited error... I'm not saying I'm right, I'm just saying... I understand, but I mean, it is a situation where that has been recognized that a defendant could choose not to request an instruction. I think there's a drug case where there was a lesser included offense of possession, or I can't remember exactly, but it's in our brief. But it does apply in that context, and one of the reasons that it has to apply in this kind of context is for the reasons that Judge King suggested, which is a defendant can't get up. If that happened, then a defendant would come in every first degree case and say, I only want first degree, I only want first degree, because this court would guarantee a new trial in that situation if it were correct that the judge could err and not give a lesser included offense, and then the defendant could actually complain about it successfully on appeal. Turning... I'm not going to call it invited error, maybe just apply the harmless error doctrine. Well, the harmless... See, I wouldn't be arguing harmless error under these facts in the error of not including... This is sort of the question that Judge Traxler asked earlier, I think. If the judge failed to instruct on second degree under these facts and it was not requested or waived, the argument weren't waived, we wouldn't argue harmless error because these facts fully support the first degree verdict, but I think it... I don't think we could show absolutely beyond reasonable doubt that if they were instructed on second degree, they wouldn't have found that. But fortunately, that is a hypothetical, and in this case, the defendant sought it and asked for it, and it is an absolutely appropriate application of the invited error doctrine, particularly when I know that the defendant himself was wadiered and asked if it was his In terms of the last issue, I want to just make a quick response to that, which is that there's no evidence on this record that the defendant did not take a nap between the time he was brought to the Cherokee Police Department, probably sometime around 2 o'clock in the morning and the first time he was interviewed at 9 a.m. And several... A couple of the witnesses were specifically asked, Agent Cosby was asked, as well as Detective Lambert, and both of them testified that they had no knowledge that he had not slept, he did not complain of sleep deprivation. The other thing I would note is that he not only gave the inconsistent statements on the day of, but he also gave inconsistent statements much later when he was in jail with Mitchell Turpin, and he gave inconsistent yet more accounts that were incorrect. So the district court in this case did act within its discretion and determined that it would invade the province of the jury. That was an appropriate discretionary call, and it does not require a Daubert hearing for the court to make that call, particularly in the facts of this case where the defendant did not provide any evidence that he hadn't slept, and where he gave inconsistent statements even after he clearly had slept, presumably days or weeks later. If your honors don't have any further questions, the evidence supports the verdict. It was a fair judgment, an appropriate and accurate judgment under the facts of this case, and the court otherwise acted within its discretion as to both the 404B evidence and the decision to exclude the sleep deprivation testimony. Thank you, your honors. Mr. Widenhouse, you may have a few seconds. Mr. Widenhouse, I know this is an exceptional case for the application of invited error doctrine, but have you found any cases where there's any exception to the invited error doctrine? I have not found a case where there's an exception. I want you to make the exception in that case here. And again, I'm trying not to be flippant about the issue, because it seems to me there's been an interesting Socratic exchange among the court and me, and then among the court and Ms. Ray on what really is going on here with regard to this particular issue. And maybe my sort of summary of it would be, we don't get, a party doesn't get, the government, the defendant, plaintiff, defendant, doesn't get the right to ask a presiding judge not to follow the law. The judge should follow the law in all instances, irrespective of what the parties request. And if I'm hearing the discussion, and I mean we're close to being accurate in what I'm hearing, there seems to be, there's almost a consensus emerging that in a situation like this, the judge should have instructed on second degree murder. Rule 31, Beck v. Alabama, government should be able to request it if they want it. That we want a fair set of instructions so that we reach a result that is the most fair in a particular case. And I don't think the court should write an opinion saying the defendant invites error and can get the judge not to follow the law. Now, I've looked at Ms. Ray's brief. I don't see the case where, that she says is there about, you know, this dealing with a situation with a lesser included offense. It may be. She's right about that. But I don't see it. I do think that this is an extraordinarily close case. You know, jury deliberated for the better part of a day and a half. That's long deliberations. Asked to see exhibits. One juror was crying when they did the poll of the jury and returned the verdict. When you have a close case like this, we want the jury to have all the options that are fully supported by the evidence. And that's what I would ask the court to do. Sort of in conclusion with regard to the second issue about the suggestion that the defendant never said he didn't take a nap or there's no indication he didn't take a nap, there was no hearing on this issue so we could put that evidence on. We had the evidence for expert, tendered the expert's CV, tendered the report, didn't get the Daubert inquiry where that evidence could have been presented one way or the other in the case. Ms. Ray is correct that the defendant never showed he didn't take a nap. The government never showed that he did. So that issue, that fact didn't get fleshed out the way that it should have been if there had been the Daubert hearing that the court should have conducted. Thank you, Mr. Whitehouse. You're also court appointed and we appreciate your undertaking representation of this client.
judges: William B. Traxler, Jr., Robert B. King, Clyde H. Hamilton